1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8

ENRIQUE BEJARANO,                    )          3:08-cv-00256-RAM
                                     )
9          Plaintiff,                )
                                     )
10         vs.                       )          **MEMORANDUM DECISION AND**
                                     )          **ORDER**
11  NDOC, et al.,                    )
                                     )
12         Defendants.               )
13  _____)

14         Before the court is Defendants' Motion for Summary Judgment. (Doc. # 99.)[1]  Plaintiff

15  opposed (*see* Doc. # 113-Doc. # 116) and Defendants replied (Doc. # 117 and Doc. # 118).  Also

16  before the court is Plaintiff's Motion for Summary Judgment. (*See* Doc. # 113- Doc. # 116.)

17  Defendants have opposed (Doc. # 119 and Doc. # 120) and Plaintiff replied (Doc. # 121).

18         Having considered the papers and the arguments presented therein, and with good cause

19  appearing, the court denies Plaintiff's Motion for Summary Judgment, and grants Defendants'

20  Motion for Summary Judgment in part, and denies it in part.

21                          **I.  BACKGROUND**

22         At all relevant times Plaintiff Enrique Bejarano (Plaintiff) was in custody of the Nevada

23  Department of Corrections (NDOC).  (Pl.'s Compl. (Doc. # 9), Defs.' Mtn. for Summ. J. 2

24  (Doc. #99).)  Plaintiff was recently granted parole[2] (*see* Doc. # 122); however, the allegations

25  set forth in Plaintiff's complaint pertain to events taking place when he was an inmate at the

26
27      [1]        Refers to court's docket number.

28      [2]        Prior to being granted parole, Plaintiff was an inmate at Ely State Prison (ESP).  (Doc. # 99.)

Lovelock Correctional Center (LCC) and Nevada State Prison (NSP). (Doc. # 9.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. Defendants are the Nevada Department of Corrections (NDOC) and the following NDOC administrators and employees: James Baca, Tara Carpenter, Greg Cox, Bruce Harkreader, Robert LeGrand, Jack Palmer, Rex Reed, Steve Suwe, and Joyce Thomson. (Doc. # 9 2-4.) Plaintiff filed his complaint on May 15, 2008, asserting three counts alleging that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment. (Doc. # 9 4-7.)

Plaintiff was housed at Northern Nevada Correctional Center (NNCC) until approximately October 2004 when he was assaulted by persons associated with the Sureno gang. (Doc. # 9 4-5, Doc. # 116 4, 18.) After recovering from his injuries, Plaintiff was assigned to LCC from approximately January 25, 2005 to May 23, 2006. (Doc. # 9 4, Doc. # 99 3, ¶ 6.)

On or around May 23, 2006, Plaintiff was transferred to NSP as part of a larger reassignment of inmates from LCC. (Doc. # 99 4, ¶ 9.) Upon his arrival and placement in the general population at NSP, Plaintiff was assaulted by persons associated with the Sureno gang. (Doc. #99 4, ¶¶ 16-18, Doc. # 116 7:15, 8.) After the assault, Plaintiff was transferred to NNCC, where he stayed until August 15, 2006. (Doc. # 99 4,¶ 19.)

After recovering from his injuries at NNCC, Plaintiff was  transferred back to LCC. (Doc. #99 5, ¶ 20.) When he arrived at LCC, Plaintiff was seen by the classification committee and was placed into administrative segregation pending full classification, and then into the Disruptive Group Management (DGM) Unit. (Doc. # 99 5, ¶¶  22-24, Doc. # 116 8:16-20.) Other known Sureno gang members were also assigned to LCC's DGM Unit. (Doc. # 99 5, ¶ 25.) Because Plaintiff claimed a general threat from Sureno gang members and had a history of two prior assaults by inmates at other NDOC institutions, he was not permitted to have contact with other known Sureno gang members housed in the DGM Unit. (Doc. # 99 5, ¶ 26.) Plaintiff received a hearing before the full classification committee on October 17, 2006, and his assignment to the DGM Unit was affirmed. (Doc. # 116 10:17-27, Doc. # 116-2 22, 55.) In addition, Plaintiff requested and received a Security Threat Group (STG)/Disruptive Group

1  (DG) due process hearing on February 15, 2007, and the panel found that Plaintiff's STG/DG

2  designation would stand.  (Doc. # 116-2 42, 51.)

3      On May 29, 2007, while Plaintiff was in the process of being transferred to Ely State

4  Prison (ESP), Plaintiff was assaulted after being placed in a holding cage with two other Sureno

5  inmates awaiting transport out of LCC.  (Doc. # 9 6 at ¶ 4, Doc. # 99 5 at ¶ 27, 6 at ¶ 39, and

6  Doc. #116-2 57.)

7                    **II.  LEGAL STANDARD**

8      The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

9  over the facts before the court.  *Northwest Motorcycle Ass'n v.  U.S. Dep't of Agric.*, 18 F.3d

10  1468, 1471 (9th Cir.  1994) (citation omitted).  All reasonable inferences are drawn in favor of

11  the non-moving party.  *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008)(citing *Anderson v.*

12  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate if "the

13  pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

14  no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

15  of law." *Id.* (quoting Fed.R.Civ.P. 56(c)).  Where reasonable minds could differ on the material

16  facts at issue, however, summary judgment is not appropriate.  *Warren v.  City of Carlsbad*,

17  58 F.3d 439, 441 (9th Cir.  1995), *cert.  denied*, 516 U.S. 1171 (1996).

18      The moving party bears the burden of informing the court of the basis for its motion,

19  together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*

20  *Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986).  Although the parties may submit evidence in an

21  inadmissible form, only evidence which might be admissible at trial may be considered by a trial

22  court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

23      In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

24  determining whether a fact is material; (2) determining whether there is a genuine issue for the

25  trier of fact, as determined by the documents submitted to the court; and (3) considering that

26  evidence in light of the appropriate standard of proof.  *Anderson*, 477 U.S. at 248.  As to

27  materiality, only disputes over facts that might affect the outcome of the suit under the

28                          3

governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings

1  and set forth specific facts by producing competent evidence that shows a genuine issue for trial.
2  *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

3       At summary judgment, a court's function is not to weigh the evidence and determine the
4  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
5  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be
6  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not
7  significantly probative, summary judgment may be granted.  *Id*. at 249-50, 255 (citations
8  omitted).

9  **III.  DISCUSSION**

10 **A.**   **PRELIMINARY MATTERS**

11     **1.**   **Plaintiff's Filings and Evidentiary Issues**

12      Preliminarily, the court must address some confusion introduced by Plaintiff's filings.
13 Defendants filed their Motion for Summary Judgment (Doc. # 99), in response to which Plaintiff
14 filed a document titled "Opposition to Defendants' Motion to Dismiss/Motion for Summary
15 Judgment/ and Plaintiff's Cross-Motion for Summary Judgment Joinder Relevance."
16 (Doc. #113.)  The clerk designated Doc. # 114, a duplicate of Doc. # 113, as Plaintiff's "Cross-
17 Motion for Summary Judgment Joinder Relevance." (*See* Doc. # 113 and Doc. # 114.) Plaintiff
18 also filed a document titled "Plaintiff's Opposition to Defendants' Motion to Dismiss Summary
19 Judgment and Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary
20 Judgment." (Doc. # 115.)  The clerk designated Doc. # 116, which is identical to Doc. # 115, as
21 Plaintiff's Cross-Motion for Summary Judgment. (*See* Doc. # 115 and Doc. # 116.) Defendants
22 are correct in pointing out that these documents are for the most part inextricably intertwined
23 and overlapping.  (Doc. # 117 2.)  Defendants indicate that they do not object to Plaintiff
24 supplementing his opposition and/or cross-motion (Doc. # 118 4, Doc. # 119, 2), however,
25 Defendants claim that they are not waiving any objections they may have regarding certain
26 exhibits for trial purposes, if necessary.  (*Id*.)

27

28

Defendants' filings do not contain specific objections to any exhibits filed by Plaintiff in support of his opposition or cross-motion. (*See* Doc. # 117- Doc. # 120.) Instead, Defendants only reaffirm what is set forth in Fed. R. Civ. P. 56(c), note that evidence without proper foundation cannot support a motion for summary judgment, and point out the language of the court's *Klingele* order. (Doc. # 117 3.) In addition, Defendants state that some of the documents provided by Plaintiff are irrelevant and that the remaining documents actually bolster Defendants' arguments. In the absence of a specific objection to the documents submitted by Plaintiff in support of his motion and his opposition to Defendants' motion, the documents are only subject to the requirements outlined in Fed.R.Civ.P. 56.

Finally, the court notes that while Defendants represent that they attached Plaintiff's full deposition transcript (Doc. # 99 3 at ¶ 1), only select portions of the transcript are attached.

### 2.    Plaintiff's Claims

Plaintiff mentions a violation of his equal protection rights, his first amendment rights, retaliation, 28 U.S.C. § 1331, and state tort negligence in his opposition to Defendants' motion and in his cross-motion, however, those claims are not part of Plaintiff's complaint. (*See* Doc. # 8 and Doc. # 9.) Defendants are correct that Plaintiff's only claims are the Eighth Amendment failure to protect and the due process violation under *Sandin*. (Doc. # 117 7, *see also* Doc. # 8.) The court previously denied Plaintiff's motion for leave to amend his complaint. (S*ee* Doc. # 67.) Therefore, to the extent Plaintiff's filings can be construed as requesting leave to amend his complaint, such request is denied. Any argument related to these claims at this time is improper and is not considered by the court.

### 3.    Request for Appointment of Counsel

Plaintiff once again has requested that the court appoint counsel. (Doc. # 113 14.) The court has denied this request on at least four previous occasions. (*See* Doc. # 26, Doc. # 31, Doc. # 67, and Doc. # 106.) The court reminds Plaintiff that a litigant in a civil rights action does not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In very limited circumstances, federal courts are empowered to request

an attorney to represent an indigent civil litigant. The circumstances in which a court will make such a request, however, are exceedingly rare, and the court will make the request under only extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 799-800 (9th Cir. 1986); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). A finding of such exceptional circumstances requires that the court evaluate both the likelihood of success on the merits and the *pro se* litigant's ability to advocate his claims. *Wilborn*, 789 F.2d at 1331 (citation omitted). Neither factor is controlling; both must be viewed together in making the finding. *Terell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (citing *Wilborn*, 789 F.2d at 1331). The district court exercises discretion in making this finding. *30.64 Acres of Land*, 795 F.2d at 800. Plaintiff has not established an inability to advocate his claims. The court has denied Plaintiff's request on four prior occasions, and denies Plaintiff's request at this time.

### 4. Claims Asserted Against the NDOC

Plaintiff names the NDOC as a defendant in this action. The Eleventh Amendment bars suits against state agencies as they are considered an "arm of the state" and not a "person" for the purpose of § 1983. *See Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997), *amended*, 127 F.3d 1135 (9th Cir. 1997); *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997)(citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989)). Therefore, the NDOC should be dismissed from this action.

### 5. Persons Amenable to Suit Under 42 U.S.C. § 1983

A state official sued in his or her official capacity for damages is not a person subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To the extent that Plaintiff alleges a damages claim against Defendants in their official capacities, Defendants should be granted summary judgment on those claims.

## B. EIGHTH AMENDMENT

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect Plaintiff from assault and disregarding the risk of harm to Plaintiff. (Doc. # 9 3-6.) Defendants argue: (1) there are no facts that Plaintiff

faced a substantial risk of harm when he arrived at NSP on May 23, 2006, and he failed to identify any enemies at NSP (Doc. # 99 16-17); and (2) Defendants did not know of and disregard a risk to Plaintiff's safety during the time period he was at LCC from August 15, 2006 to August 7, 2007, including the date he was to be transferred from LCC to ESP, May 29, 2007 (Doc. # 99 17). In addition, Defendants argue that Count II fails because Plaintiff did not suffer physical injury while placed in administrative segregation at LCC. (Doc. # 99 21-22.)

Preliminarily, Defendants correctly point out that these factual allegations are appropriately argued under the Eighth Amendment analysis and should not be analyzed under the Due Process Clause. (Doc. # 99 12-13.) The court notes that, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing [a plaintiff's] claims.'" *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994), Rehnquist, C.J., for plurality (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, these claims will be analyzed under the Eighth Amendment right to be free from cruel and unusual punishment rather than any generalized notions of due process under the Fourteenth Amendment.

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care**,** and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

The issue of failure to protect was specifically addressed by the United States Supreme Court in *Farmer*. "[P]rison officials have a duty…to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often

violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347). Thus, an assault by another inmate can violate the Eighth Amendment despite the fact that the actor is not an agent of the state.

Not "every injury suffered by one prisoner at the hands of another [ ] translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A violation of the Eighth Amendment is only found when an objective and subjective component are met. *See Farmer*, 511 U.S. at 834. First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id.* (citations and quotations omitted). In a failure to protect claim, the prisoner must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted).

Second, the inmate must satisfy the subjective element; the prison official must be found to have acted with deliberate indifference. *Farmer*, 511 U.S. at 834. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. The Supreme Court gave the following specific example: "[I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate

9

attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" *Id.* at 842-43. Furthermore, "a prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

Therefore, in order to meet their burden on summary judgment, Defendants must provide evidence that establishes: (1) that the deprivation suffered by Plaintiff is not sufficiently serious; or (2) that no Defendant knew of and acted with deliberate indifference toward Plaintiff's risk of harm. *Farmer*, 511 U.S. at 834-35. To avoid summary judgment, Plaintiff must show that the alleged deprivation was sufficiently serious and that the prison officials' conduct constituted deliberate indifference. *Id.*

### 1.   Count I

In Count I, Plaintiff claims an Eighth Amendment violation in connection with his assault upon his transfer from LCC to NSP. (Doc. # 9 5.) Defendants claim that they were not deliberately indifferent because Plaintiff failed to identify any enemies in the general population upon his arrival to NSP. (Doc. # 117 5.)

Defendants do not appear to dispute that Plaintiff was assaulted upon being placed in the general population at NSP or that the assault was sufficiently serious so as to satisfy the objective prong of the Eighth Amendment analysis.

Turning to the second prong of the Eighth Amendment analysis, deliberate indifference, the court finds that an issue of material fact exists to be determined by the trier of fact regarding whether Defendants knew of and disregarded Plaintiff's risk of harm by placing him in the general population at NSP. While Defendants claim that Plaintiff told Defendant Baca at his intake at NSP that he did not have any enemies (Doc. # 117 5, Decl. of James Baca (Doc. # 99-1)

10

at ¶ 10), in Plaintiff's grievance related to this incident, Plaintiff claims that he told Defendant Baca that he could not walk the yard at NSP. (Doc. # 115-2 at 120, Doc. # 116-2 at 34.) While Defendants claim this is inconsistent with Defendant Baca's recollection, the trier of fact may believe Plaintiff's version of events and find that Defendants had knowledge of and disregarded the risk of placing Plaintiff in the general population at NSP. Moreover, the evidence suggests that it was documented that Plaintiff had been involved in a prior assault with known members of the Sureno gang and that other Sureno members had been transferred to NSP along with Plaintiff. (Doc. # 116-2 93- 94, Decl. of Robert LeGrand (Doc. #99 -1) at ¶ 8.) *See Farmer*, 511 U.S. at 842-43. Defendants did not submit sufficient evidence to establish that they did not know about Plaintiff's prior assault history. Rather, Defendants acknowledge Plaintiff's assault history. (*See, e.g.*, Decl. of Robert LeGrand (Doc. # 99-1) at ¶ 14.) A triable issue of material fact remains as to Defendants' deliberate indifference, and therefore summary judgment is not appropriate with respect to Count I.

**2.     Count II**

Plaintiff claims that Defendants disregarded Plaintiff's risk of harm when they placed him in administrative segregation at LCC with other known Sureno gang members. (Doc. # 99 5, ¶¶ 23-26.) Defendants argue they are entitled to summary judgment on Count II because Plaintiff suffered no physical harm in connection with his placement in administrative segregation. (Doc. # 9 21-22.)

The evidence is clear that Plaintiff did not suffer any harm when he was placed in administrative segregation at LCC. Defendants contend, and Plaintiff does not present evidence to dispute, that while in administrative segregation, Plaintiff was prohibited from coming into contact with other Sureno members. The court finds that under the circumstances, Plaintiff's placement in administrative segregation was not sufficiently serious to fulfill the objective component of the Eighth Amendment. In other words, Plaintiff has not supplied the court with any evidence to establish that his conditions of confinement in administrative segregation violate the Eighth Amendment-that they "involve the wanton and unnecessary infliction of

1    pain," were "grossly disproportionate to the severity of the crime warranting imprisonment,"

2    or created a substantial risk of serious harm.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981),

3    *Farmer* 511 U.S. at 834.  Therefore, Defendants are entitled to summary judgment on Plaintiff's

4    Eighth Amendment claim in Count II.

5         **3.     Count III**

6         In Count III, Plaintiff alleges that Defendants disregarded the risk of harm to Plaintiff

7    when he was assaulted after Defendants placed him in a holding cage with known Sureno gang

8    members while in the process of being transported from LCC to ESP, on or about May 29, 2007.

9    (Doc. # 9 7.)  Defendants argue: (1) responsibility for the custody and security of Plaintiff during

10   the transportation process was with the central transportation officers and not with Defendants

11   (Doc. # 99 18); (2) Plaintiff did not inform the central transportation officers that the other

12   inmates in the holding cage might assault him (Doc. # 99 19); (3) the other inmates were in full

13   restraints (Doc. # 99 20); and (4) Defendants are not responsible for a surprise attack (Doc.

14   # 99 21).

15        First, Defendants do not appear to dispute that Plaintiff's assault is sufficiently serious

16   so as to satisfy the objective prong of the Eighth Amendment analysis.

17        Second, as to the subjective prong of the Eighth Amendment analysis, the court finds

18   that there is an issue of material fact as to whether Defendants were deliberately indifferent to

19   Plaintiff's risk of harm in connection with his assault while being transported from LCC to ESP.

20   While Defendants claim that Plaintiff did not notify prison staff that he was concerned for his

21   safety and that responsibility for his security lied with the central transportation officers, the

22   evidence suggests that Plaintiff's caseworker, Ms. Thomson, and perhaps others, had knowledge

23   of Defendants problems with Sureno members and his prior assaults.  (*See* Doc. # 115-2 94-97,

24   100-103,  Doc. # 116-2 77; *see also* Doc. # 116-2 83 ("your problems with other inmates are all

25   documented..."), Doc. # 116-2 95-98, 120.)  In addition, the grievance submitted by Plaintiff

26   claims that he did relay the fact that the Surenos were his enemies. (Doc. # 116-2 6.) If the trier

27   of fact were to believe Plaintiff's version of events, he or she might well find that Ms. Thomson

28

1  or other LCC Defendants should have taken action to convey this information to the
2  transportation officers prior to Plaintiff's transport.

3       While Defendants contend that they have no liability, in part, because Plaintiff never
4  identified another inmate as an enemy (Doc. # 99 3:12-13, Doc. # 117 5), they admit that
5  Plaintiff was not permitted to have contact with other Sureno gang members while he was in
6  administrative segregation at LCC. (Doc. # 99 20.)  Plaintiff claims that the inmates who
7  assaulted him were Sureno gang members. (Doc. 99-1 at 26:3-10.) Viewing the evidence in the
8  light most favorable to Plaintiff, a rational fact finder could conclude that Defendants were on
9  notice of Plaintiff's problems with Surenos and inferred from this information that Plaintiff was
10 at a serious risk of harm by being placed in a holding cage with other Surenos while being
11 transported to ESP.  A fact finder may therefore conclude that this incident should not be
12 construed as a surprise attack.

13      Finally, while Defendants argue that they acted reasonably because Plaintiff and the other
14 inmates were placed in the holding cage in full restraints, a fact finder might conclude that
15 Defendants should have passed along Plaintiff's history of prior assaults and the fact that he
16 was precluded from coming into contact with Sureno members while in administrative
17 segregation at LCC.  This information might lead the fact finder to conclude that Plaintiff's
18 placement in a holding cage with these inmates was unreasonable, even if full restraints were
19 used.

20      In sum, the court finds that a triable issue of material fact remains as to Defendants'
21 deliberate indifference, and therefore summary judgment is not appropriate with respect to
22 Count III.

23 **C.    DUE PROCESS**

24      Plaintiff alleges that Defendants violated his right to due process as a result of his
25 classification and/or transfer within Nevada's prisons. (Doc. # 9 3-6.) Defendants argue that
26 Plaintiff's due process claims fail because an inmate has no protectible constitutional liberty
27 interest in being confined to a particular institution.  (Doc. # 99 11-12.)

28

In analyzing the procedural safeguards owed to an inmate under the Due Process Clause, the court considers two elements: (1) whether the inmate suffered a deprivation of a constitutionally protected liberty or property interest, and (2) whether the inmate suffered a denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003)(citations omitted), *abrogated on other grounds in Hayward v. Marshall*, 603 F3d 546 (9th Cir. 2010). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish a liberty interest for which the protection is sought. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). A liberty interest may arise from the Due Process Clause itself or from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1985)).

Second, "a liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*." *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005)(emphasis added)(internal citation omitted). Under *Sandin*, liberty interests created by the state are generally limited to those that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether a restraint imposes "atypical and significant hardship," a court considers a condition or a combination of conditions or factors on a case by case basis, rather than invoking a single standard. *Serrano*, 345 F.3d at 1078; *see also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)(citation omitted). Although there is no single standard for determining whether a prison hardship is atypical and significant, the Supreme Court in *Sandin* cited three factors that provide a helpful framework: "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint

14

1  imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's

2  sentence." *Sandin*, 515 U.S. at 486-87.

3        **1.    Transfer**

4        In Count I, Plaintiff alleges that his due process rights were violated in connection with

5  his transfer from LCC to NSP, where he was assaulted.  (Doc. # 9 5.)  In Count II, Plaintiff

6  claims that his due process rights were violated in connection with his transfer from LCC to ESP,

7  where  he was assaulted during the transport process.  (*Id*.)  Defendants argue that Plaintiff

8  has no protectible constitutional liberty interest in being confined to a particular institution.

9  (Doc. # 99 11-12.)

10        The Due Process Clause does not grant prisoners a liberty interest in staying at a

11  particular institution. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976)(no liberty interest arising

12  from Due Process Clause itself in transfer from low to maximum-security prison because

13  "[c]onfinement in any of the State's institutions is within the normal limits or range of custody

14  which the conviction has authorized the State to impose").  "[G]iven a valid conviction, the

15  criminal defendant has been constitutionally deprived of his liberty to the extent that the State

16  may confine him and subject him to the rules of its prison system so long as the conditions of

17  confinement do not otherwise violate the Constitution." *Id*. at 224.  The mere fact that "life in

18  one prison is much more disagreeable than in another does not in itself signify that a Fourteenth

19  Amendment liberty interest is implicated when a prisoner is transferred to the institution with

20  the more severe rules." *Id.* at 225. "The conviction has sufficiently extinguished the [prisoner's]

21  liberty interest to empower the State to confine him in *any* of its prisons." *Id.* at 224 (emphasis

22  original).

23        In addition, the Due Process Clause does not confer a liberty interest in being confined

24  in the general prison population.  *Hewitt v.  Helms*, 459 U.S. 460, 466-68 (1983), *abrogated*

25  *on other grounds in Sandin v. Conner*, 515 U.S. 472 (1995) ("administrative segregation is the

26  sort of confinement that inmates should reasonably anticipate receiving at some point in their

27  incarceration"); *see also Montayne v.  Haymes*, 427 U.S. 236, 242 (1976) (mere transfer from

28

one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature if there is no state law to the contrary). The courts do not review prison authorities' decisions regarding confinement as long as the confinement at issue does not otherwise violate an inmate's constitutional rights. *Hewitt*, 459 U.S. at 467. Lastly, the Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).

"It is well settled that the decision where to house inmates is at the core of prison administrators' expertise. For this reason the Court has not required administrators to conduct a hearing before transferring a prisoner to a bed in a different prison, even if life in one prison is much more disagreeable than in another." *McKune v. Lile*, 536 U.S. 24, 39 (2002)(internal citations and quotations omitted). Thus, Plaintiff's mere transfer from LCC to NSP and from LCC to ESP did not require Defendants to conduct a hearing. Plaintiff's claim that the transfer decisions were made in disregard of his risk of harm are addressed above in the Eighth Amendment analysis. Because Plaintiff has failed to demonstrate a protected liberty interest, summary judgment should be granted in favor of Defendants on Plaintiff's due process claims in Counts I and II.

### 2. Administrative Segregation

In Counts II and III, Plaintiff alleges that his due process rights were violated in connection with his August 2006 transfer and placement in administrative segregation with members of the Sureno gang at LCC. (Doc. # 9 6-7.) Defendants argue that Plaintiff fails to assert a protected liberty interest. (Doc. # 99 11-12.)

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). In *Sandin*, the court found that there was no liberty interest protecting against a thirty-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin*, 515 U.S. at 485. By contrast, in *Wilkinson*, the Supreme Court

articulated circumstances under which prison conditions reached the level of an "atypical and significant hardship" sufficient to trigger due process protections: an inmate assigned to Ohio's supermax facility was prohibited almost all human contact; had a light on 24 hours a day; was only able to exercise, in a small indoor room, for one hour a day; the duration was indefinite and only reviewed annually; and the placement disqualified an otherwise eligible inmate for parole consideration. *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005).

Applying the *Sandin* factors to Plaintiff's placement in administrative segregation here shows that Plaintiff has not endured an "atypical and significant hardship." There is no evidence that Plaintiff's segregation was materially different from those conditions imposed on inmates in any other form of segregation or in the general population. Nor is there any evidence that the length of Plaintiff's sentence was affected by his placement in administrative segregation. There is no evidence here that even remotely resembles the conditions found to constitute an atypical and significant hardship in *Wilkinson*. Accordingly, the court finds that Plaintiff has failed to show that he had a liberty interest in connection with his placement in administrative segregation.

Even if Plaintiff could establish that he had a liberty interest concerning his assignment to administrative segregation, the court finds that Plaintiff received all the process he was due. In *Toussaint v. McCarthy*, 801 F.2d 1080 (9ᵗʰ Cir. 1986), *abrogated in part on other grounds in Sandin v. Connor*, 515 U.S. 471 (1995), the Ninth Circuit held that when prison officials initially determine whether a prisoner is to be segregated for administrative reasons, due process requires that they comply with the following procedures: (1) they must hold an informal non-adversary hearing within a reasonable time after the prisoner is segregated; (2) the prisoner must be informed of the reasons for segregation; and (3) the prisoner must be allowed to present his views. *Id*. at 1100. Due process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, a written decision describing the reasons for placing the prisoner in administrative segregation or

17

1  disclosure of the identity of any person providing information leading to placement of a prisoner

2  in administrative segregation.  *Id*. at 1100-01.

3          Plaintiff does not deny that he was placed in administrative segregation for his own safety

4  following the assault that occurred at NSP in May 2006.  Plaintiff submits evidence establishing

5  that he received notice of a classification hearing with respect to his assignment to

6  administrative segregation and admits that he was given a hearing before the classification

7  committee.  (Doc. # 116-2 22, Doc. # 116 13, and Doc. # 116-1 5.)  Plaintiff does not allege or

8  present evidence of any deficiency with respect to the classification hearing or provide any

9  allegations regarding what other process he claims he was due.

10          Even if this was construed as disciplinary segregation, Plaintiff has not produced evidence

11  to establish that he was deprived of the due process protections outlined in *Wolff v. McDonnell*,

12  418 U.S. 539 (1974).

13          Because Plaintiff's placement in administrative segregation does not implicate a

14  constitutionally protected liberty interest rooted either in the Fourteenth Amendment itself or

15  state law, the procedural guarantees of the Fourteenth Amendment do not arise.  However, even

16  if Plaintiff could establish that he was deprived of a liberty interest, Defendants afforded Plaintiff

17  the process he was due.  Therefore, Defendants are entitled to summary judgment on Plaintiff's

18  due process claims in Counts II and III.

19  **D.     QUALIFIED IMMUNITY**

20          Defendants argue they are entitled to qualified immunity because Plaintiff cannot

21  demonstrate any unlawful conduct by Defendants.  (Doc. # 99 22-23.)  Even if Plaintiff

22  establishes a constitutional violation, Defendants contend that there is no evidence that any

23  of the Defendants had notice that their conduct would be considered clearly unlawful. (*Id*. at

24  23.) Defendants further assert that they acted reasonably to stop others from attacking Plaintiff.

25  (*Id*.)

26          "[Q]ualified immunity protects government officials from liability for civil damages

27  insofar as their conduct does not violate clearly established statutory or constitutional rights

28                                                                  18

of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (citation and internal quotations omitted). Under certain circumstances, state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002). When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001). Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009) *(*"while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").

In analyzing whether a defendant is entitled to qualified immunity, the court must consider two issues. The court must determine whether the plaintiff alleges a deprivation of a constitutional right, assuming the truth of his factual allegations, and whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (2010) (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. 808, 816 (2009)). "Whether a right is clearly established turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. at 822).

The court finds that an Eighth Amendment claim is presented under the facts alleged by Plaintiff. Moreover, Defendants have failed to explain why it would not be clear to a reasonable NDOC employee that the knowing disregard of a risk of harm to Plaintiff is unconstitutional. The general law regarding the Eighth Amendment and failure to protect was clearly established at the time periods in question in this case. *See Farmer v. Brennan*, 511 U.S. 825 (1994).

Upon resolution of factual issues, prison officials may be relieved of any liability in this case. However, if Plaintiff's version of the facts were to prevail at trial, a jury might conclude

19

that the prison officials knew of and disregarded Plaintiff's risk of harm. Under such circumstances, the prison officials' actions are not protected by qualified immunity. Thus, summary judgment is inappropriate on this ground.

**E.     PERSONAL PARTICIPATION**

Defendants Cox, Reed, Suwe and Carpenter argue that they should be dismissed from this action because Plaintiff fails to show that they personally participated in the alleged constitutional deprivations. (Doc. # 99 23-24.)

A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)(citation omitted).

In Count I, Plaintiff alleges that Defendants Reed and Suwe ordered Plaintiff's transfer from LCC to NSP, where he was assaulted. (Doc. # 9 5, ¶ 1.) Plaintiff alleges that Defendant Carpenter, Plaintiff's caseworker, failed to stop Plaintiff's transfer from LCC to NSP when she knew Plaintiff's assault history. (Doc. # 9 5, ¶ 3.) Plaintiff alleges that these Defendants disregarded the risk of harm to Plaintiff in connection with his transfer from LCC to NSP. (Doc. # 9 5, ¶ 5.)

In Count II, Plaintiff alleges that Defendants Reed and Suwe approved Plaintiff's transfer back to LCC after his recovery at NNCC from the injuries sustained in his assault at NSP. (Doc. # 9 6, ¶ 1.) Plaintiff alleges that Defendant Cox placed Plaintiff into administrative segregation, ignoring the risk of harm to Plaintiff. (Doc. # 9 6, ¶ 2.)

While Plaintiff alleges that Defendants Reed and Suwe ordered Plaintiff's transfer from LCC to NSP and approved Plaintiff's transfer back to LCC, in disregard of Plaintiff's risk of harm,

Plaintiff has not produced any actual evidence demonstrating that Defendants Reed and Suwe personally participated in a violation of Plaintiff's rights under the Eighth Amendment. Therefore, Defendants Reed and Suwe should be dismissed from this action.

With respect to Defendant Carpenter, Plaintiff produced an inmate grievance statement form indicating that he spoke with Defendant Carpenter and told her that he could not be transported for safety reasons.  (Doc. # 115-2 94, Doc. #116-2 94.)  The court finds that this is sufficient to show a relationship between Defendant Carpenter and the alleged Eighth Amendment violation.

Plaintiff's only allegation with respect to Defendant Cox is that Defendant Cox placed him in administrative segregation.  (Doc. # 9 6, ¶ 2.)  The court has found that Defendants are entitled to summary judgment with respect to Plaintiff's due process claim, *supra*, and therefore, there are no remaining allegations that would serve to tie Defendant Cox to the conduct alleged to be in violation of the Eighth Amendment.   Moreover, the only evidence produced by Plaintiff with respect to Defendant Cox indicates that Defendant Cox merely responded to Plaintiff's grievance concerning the assault that occurred when Plaintiff was awaiting transport from LCC to ESP. (Doc. # 115-2 58.)  Plaintiff has not produced any evidence that Defendant Cox personally participated in any Eighth Amendment violation.  Therefore, Defendant Cox should be dismissed from this action.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #99) is **GRANTED IN PART AND DENIED IN PART** as follows:

- Summary Judgment is granted to the Nevada Department of Corrections (NDOC) as to all claims.
- Summary Judgment is granted as to all Defendants on all claims to the extent Plaintiff alleges claims against them in their official capacities with respect to damages.

21

- Summary Judgment is denied as to Plaintiff's Eighth Amendment claim set forth in Count I.
- Summary Judgment is granted as to Plaintiff's Eighth Amendment claims set forth in Count II.
- Summary Judgment is denied as to Plaintiff's Eighth Amendment claim set forth in Count III.
- Summary Judgment is granted as to Plaintiff's due process claims set forth in Count I, Count II, and Count III.
- Summary Judgment is granted as to Defendants Reed, Suwe, and Cox .
- Summary Judgment is denied as to Defendant Carpenter.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #113-Doc. # 116) is **DENIED**.

**IT IS FURTHER ORDERED** that to the extent Plaintiff's filings can be construed as requesting leave to amend, such request is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for appointment of counsel (Doc. #113 14) is **DENIED**.

DATED:   January 19, 2011.

_____
UNITED STATES MAGISTRATE JUDGE